IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

WILFREDO PORTALATIN,
        Plaintiff,
     v.                     Case No. 3:06-cv-87-KRG-KAP
JEFFREY A. BEARD, et al.,
        Defendants

## Report and Recommendation

### Recommendation

Plaintiff's motion for summary judgment, docket no. 43, should be granted in part and denied in part.

### Report

Plaintiff, an inmate at S.C.I. Houtzdale, alleges that he is a member of the Santerian religion and that part of his religious practice is the wearing of a necklace of multicolor orisha beads. Plaintiff filed a complaint which eventually boiled down to three issues: 1) defendants would not let him send his multicolored beads to a religious figure for repair because the Pennsylvania Department of Corrections' current practice is to permit only the purchase or replacement of his beads with white beads from an approved vendor; 2) defendants would not let him wear his beads during visits in the visiting area; and 3) defendants would not allow him to wear his beads if he were confined in the RHU.

The third issue is not a live case or controversy because plaintiff is not in the RHU and does not allege in his amended complaint that he ever was in the RHU. See United States v.

Kissinger, 309 F.3d 179, 180 (3d Cir.2002); see also Los Angeles v. Lyons, 461 U.S. 95, 109-13 (1981).

The second issue presents no genuine dispute of fact under the First Amendment or Section 3 of the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C.§ 2000cc-1(a)(1)-(2). That statute provides in part: "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution," unless the burden furthers "a compelling governmental interest," and does so by "the least restrictive means." To state a claim either under the constitution or under RLUIPA, an inmate must allege a substantial burden on his religious exercise. See Kretchmar v. Beard, 241 Fed.Appx. 863, 865, (3d Cir.2007). Regardless of how central the wearing of orisha beads is to plaintiff, that he cannot wear his beads when in the visiting area burdens his religious practice only slightly. It is unnecessary even to consider defendants' security justifications for the prohibition of beads in the visiting area.

The first issue should be resolved in favor of plaintiff. Defendants do not challenge either the centrality of the plaintiff's practice or the sincerity of his beliefs. They rely entirely on the four factor test of Turner v. Safley, 482 U.S. 78 (1987) and O'Lone v. Shabazz, 482 U.S. 342 (1987), which requires the court to consider whether there: 1) is a rational connection

between the prison's action or regulation and the legitimate government interest put forward to justify it; 2) is there an alternative means of exercising the right that remains open to the inmate; 3) will the accommodation of the asserted constitutional right have any impact on guards, on other inmates, and on the allocation of the prison's resources; and 4) are there ready alternatives to the restriction. O'Lone v. Estate of Shabazz, 482 U.S. at 350-53; see also Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 338-44 (3d Cir.1987), cert. denied, 486 U.S. 1006 (1988).

Here, the dispositive analysis is of the first and fourth Turner v. Safley factors: defendant's security rationale for excluding multicolor beads and non-approved vendors, and the necessity for defendants' policy as a way of maintaining security.

It is not in dispute that plaintiff received a religious accommodation of his multicolored orisha beads in 1999, and has apparently been wearing them without incident since then. Defendants' justification for prohibiting plaintiff from retaining them while permitting him to wear white beads is that multicolored beads may signal gang affiliation. I do not make light of this justification, but the cursory reference to security of the institution as a justification is inadequate, in light of the Pennsylvania Department of Corrections' own previous accommodation in 1999. If orisha beads were the cause of some gang related

3

incident, one would expect the defendants (in either the Zaccarelli Declaration or the Klemm Declaration) to be able to say so expressly, rather than make the general observation that colored beads can and have been used as gang symbols. I do not doubt the declarations: everything from tattoos to hairstyles to clothing patterns to hand gestures has been used to signal intraprison affiliations. Wherever and whenever this use of multicolored beads occurred the Pennsylvania Department of Corrections' response was not, however, to remove all colored beads. From the record it appears that plaintiff could have worn his colored beads indefinitely if they had not broken. This underscores the very weak fit between the defendants' perception of danger and their policy to address it.

The other asserted policy justification for preventing plaintiff from sending the beads to a religious adviser is that if the beads go to an unapproved vendor they might be used to introduce contraband into prison by soaking the strings with illicit drugs, harmful chemicals, or unsanitary materials such as animal blood. Further, defendants say, the expertise and equipment for detecting these forms of contraband does not exist at the prison and personnel are not trained in detection.

I frankly reject this rationale, which goes to the fourth <u>Turner v. Safley</u> factor, as insubstantial. I have been in Pennsylvania Department of Corrections facilities, including

4

Houtzdale, and at the visitors' entrance are drug scanners that, corrections officers have told me, could detect a teaspoon of cocaine in an olympic-sized swimming pool. As for potentially harmful chemicals, they are freely available in prison for use by inmates in cleaning details. Finally, the defendants assert that animal blood is unsanitary. The same could be said of anything in excessive amounts, but animal blood in itself is not unsanitary. I routinely purchase it in large boxes as garden fertilizer. To accept without evidentiary support the defendants' claim that any possibility of foreign matter being smuggled into prison makes the proposed repairer of the plaintiff's beads an insurmountable threat is not justified.

The third <u>Turner v. Safley</u> factor weighs in favor of the plaintiff because defendants offer no evidence of spillover effects from accommodating plaintiff's request. The second factor weighs in defendants' favor because there are always a plethora of religious activities and rituals in any genuine religion which remain regardless of a restriction on any one observance.

In sum, the defendants do not show any necessity for depriving plaintiff of what defendants do not contest is a central religious practice simply because they do not wish to make an individualized examination of the beads to ensure that they do not in fact contain contraband when returned. It must be presumed in the absence of evidence to the contrary that the parties act in

5

good faith. Defendants are not bound by the First Amendment or RLUIPA to allow colored beads to all claimants, even sincerely religious ones, nor are they prohibited from inspecting even religious artifacts for their potential illicit use. But defendants' actions are tantamount to using the fortuitous circumstance of plaintiff's beads breaking as a reason for confiscating something they have not seen the need to confiscate directly for almost a decade. Their two justifications (danger of use as a gang symbol, danger of contraband) are insubstantial. Injunctive relief should be granted to plaintiff on the claim seeking the repair and return of the colored beads he has always used.

Plaintiff adds a claim for money damages. Summary judgment should be entered for defendants and against plaintiff on that claim. It is inconsistent with plaintiff's profession of an inherently noncompensable religious need for the orisha beads to place a price tag on them and plaintiff does not allege, much less provide evidence of, any compensable loss. Punitive damages are not available absent (at the least) bad faith conduct by defendants, and there is not the slightest showing of bad faith or improper motive on defendants' part.

A second reason compensatory damages and nominal damages are not warranted is that plaintiff alleges no actual deprivation of his religious rights. The delay, past or future, in his

6

obtaining the repair of his beads has been due to plaintiff's failure to exhaust the defendants' legitimately insisted on administrative remedy system for requesting and approving religious accommodations.

Third, the right which defendants may be said to have infringed, plaintiff's right to have this particular set of multicolor beads repaired and inspected on an individual basis for contraband at the prison instead of being replaced by white ones sold by an approved vendor, is such a fact bound and specific one that it can hardly be said to be clearly established in law. Money damages are inappropriate where the defendants have not violated clearly established law.

Pursuant to 28 U.S.C.§ 636(b)(1), the parties are given notice that they have ten days to serve and file written objections to this Report and Recommendation.

DATE: 17 February 2009

Keith A. Pesto,
United States Magistrate Judge

Notice by ECF to counsel of record and by U.S. Mail to:

Wilfredo Portalatin DA-0757
S.C.I. Houtzdale
P.O. Box 1000
Houtzdale, PA 16698-1000